## CENTRAL WEST TEXAS COOPERATIVE MARKETING ASS'N, Inc. v. BANNER DAIRIES.

### No. 2961.

Court of Civil Appeals of Texas. Eastland.

Oct. 24, 1952.

Rehearing Denied Nov. 14, 1952.

George W. Overshiner and Archer, Bryant & Overshiner, Abilene, for appellant.

Brooks, Fergus, Nemir & Brooks, Abilene, for appellee.

COLLINGS, Justice.

This suit was brought by the Central West Texas Cooperative Marketing Association, Inc., against Banner Dairies, for a temporary injunction and upon final hearing, a permanent injunction, enjoining Banner Dairies from paying certain monies alleged to have been assigned by third party producers of milk to the Association. The Association asked for an accounting of sums alleged to have been wrongfully paid by Banner Dairies to such producers, and for damages. After hearing, an order was entered denying the temporary injunction and Central West Texas Cooperative Marketing Association, Inc., has brought this appeal.

The facts as found by the trial court were:

"(1) That plaintiff, a cooperative marketing association, without capital stock and incorporated under the laws of the State of Texas, entered into agreements with various producers of milk, said agreements being identical in form with the copy of agreement attached to plaintiff's original petition, whereby said producers, respectively, agreed to deliver to the Association (as plaintiff will hereinafter be designated), for marketing when called upon to do so, all milk produced or acquired by them and that said Association might require such milk to be delivered to the plant of said Association, or to any plant designated by the Association, or that such producers might deliver their milk directly to the plant of distributors of pasteurized milk who purchased milk from or through the Association and who selected from among such producers, with their consent

and subject to the approval of the Board of Directors of the Association, such producers whose milk they desired to purchase through the Association.

"Each producer who entered into such contract agreed to the assessment of liquidated damages against him for breach of the agreement or violation of any rules or regulations of the Association and to injunction to prevent further breach and for decree of specific performance in any proceeding instituted against him by the Association.

"Each of such agreements provided that the Association might establish selling agencies, contract with selling agencies, and might acquire and construct plants under certain conditions.

"Each of such agreements provided that both parties should give notice to third parties with whom they were dealing of the obligations of the contract:

"Each of such agreements provided, 'that the Association shall have the right to deduct or cause to be deducted from the amounts that may become due to the producer for milk and other dairy products *delivered to any plant or station designated by the Association,* the expenses of such selling agency as it may have established, including cost of testing milk for butter fat and similar services, and such sums as may be necessary to repay money borrowed and/or to pay for plants constructed or acquired and equipment purchased and to set up such reserves as may be deemed necessary by the Board of Directors * * *; provided, however, there shall not be collected or deducted by the Association more than 5¢ per 100 pounds of milk delivered to or marketed through the Association for the purpose of defraying cost of services rendered by the Association and for the purpose of providing a sinking fund to pay the cost of its plant, or any additions thereto or any additional plant.'

"(2) The plaintiff association entered into such agreements with 273 producers, who thereby became members of such Association.

"(3) Defendant, Banner Dairies, was not a party to any of such agreements between plaintiff and such producers.

"(4) No plants for marketing of milk were constructed or acquired, or equipment purchased, or reserves set up by the Association.

"(5) There was no proof, or in any event the proof was insufficient, to establish that the Association ever designated defendant, Banner Dairies, or any of its plants, as a plant or station to which producers were required to deliver their daily production of milk or dairy products sold by them.

"(6) There was no selection by Banner Dairies of any of such producers or members of the Association, with their consent and with the approval of the Board of Directors of the Association, with the desire of purchasing their milk through the Association.

"(7) The Court finds, as a fact, that no milk or dairy products of any of such producers were purchased by the defendant, Banner Dairies, either from or through the plaintiff Association.

"The Court finds, as a fact, however, that some of the producers, members of such Association, delivered and sold their milk direct to Banner Dairies and Banner Dairies purchased such milk direct from some of such producers, and paid said producers, respectively, the full market price for the milk sold by them to Banner Dairies.

"There were offered in evidence 79 of such agreements between plaintiff and producers who were selling and delivering their milk, on their own initiative, direct to Banner Dairies at its plants located in Abilene, Brownwood, Midland, San Angelo and Big Spring, Texas.

"(8) The Court finds that between 40 and 50% of the total membership (producers) of the Association sold their milk to handlers of milk other than defendant, Banner Dairies.

"That the Association had employed two or three men who were at each of the plants of Banner Dairies on two or three occasions for the purpose of testing and

weighing milk sold by producers to Banner Dairies, but that no such testers or checkers were kept regularly at any of such plants and there was no testimony as to the value or the costs of such services to plaintiff.

"(9) The Court finds that neither the plaintiff, nor any of the producers who executed such agreements, gave sufficient notice, if in fact any notice, to the defendant, Banner Dairies, of the obligations of the contract, none of such contracts having ever been delivered to Banner Dairies for inspection. However, some 79 of such contracts were offered in evidence upon the hearing of plaintiff's application for temporary injunction. The Court finds that on or about March 14, 1952 plaintiff wrote letters to the plant managers of defendant at San Angelo, Abilene, Midland, Big Spring and Brownwood, in part, as follows: 'In order that we may operate our program, it will be necessary that you furnish us with a complete list of your producers and their can numbers. We will need this information so that we may know which of your producers are members of our Association and which ones we are eligible to weigh and test. As you probably know, our contract calls for the dues payment of 5¢ per cwt for weighing and testing members' milk. We naturally expect that you will check off the 5¢ per cwt dues of the Association members and pay that directly to us.'

"On or about March 28, 1952, plaintiff sent the various plant managers a letter as follows: 'There seems to be some doubt in your mind as to whether or not you can deduct the 5¢ per cwt dues from the Association members. The Association contract, a copy of which is enclosed, gives you the authority to deduct or cause to be deducted our dues. We have been advised by our attorney that this is in effect, an assignment against each producer's check and is payable to the Association when we began to perform certain marketing services. Inasmuch as we have already begun these marketing services, March 15, 1952, we feel justified in asking that this assignment be put into effect and that the resulting money paid to us out of April 1, 1952 pay checks. I am enclosing a list of producers which we believe to be selling milk to you, who have Association contracts. If it is necessary, we would be glad for you to inspect individual contracts to verify our list during regular banking hours,' and a list of the names of producers, including some of those who were selling milk direct to Banner Dairies and had signed such agreements with the Association, was included with such letter.

"(10) The defendant, Banner Dairies, did not deduct the 5¢ cwt, from such producers who sold their milk direct to the defendant, at its different plants, but paid the full market price thereof directly to such producers, respectively.

"That there was no proof that defendant, in any manner, interfered with, damaged, or injured said plaintiff Association or threatened to do so."

Based upon the facts it was concluded by the court, as a matter of law:

"(1) That defendant, Banner Dairies, is not legally obligated to pay, could not safely pay, and would not be justified in paying, 5¢ per cwt of the market price of the milk purchased by it directly from the producers, to plaintiff Association instead of to such producers, respectively.

"(2) That the agreements between plaintiff Association and the producers do not constitute an equitable assignment of 5¢ per cwt of the market price of the milk purchased by defendant directly from some of the producers and not purchased through the Association.

"(3) That, in any event, if plaintiff Association, has a cause of action against defendant, it has an adequate remedy at law and that irreparable injury would not result to plaintiff if a temporary injunction is denied.

"(4) That plaintiff's prayer that defendant be temporarily enjoined 'from diverting the said 5¢ cwt from it, the rightful owner, to the assignor (producers) or in any manner interfering with, damaging, or injuring said plaintiff Association,' should be denied, as per the order of the Court herein."

In appellant's first point it is contended that the court erred in holding that the contracts between appellant and its member producers did not assign to appellant from its member producers' pay checks owed by appellee 5¢ per hundred pounds of milk. We cannot agree with this contention. The contract provided for certain services to be performed by the Association, for the repayment of borrowed money for the purchase and construction of plants, the setting up of reserves as deemed necessary by the Board of Directors of the Association, and provided for the collection or deduction of "not * * * more than 5¢ per cwt of milk delivered or marketed through the Association for the purpose of defraying costs of services rendered by the Association and for the purpose of providing a sinking fund to pay the costs of its plants or any additions thereto or in additional plants."

In order to constitute an assignment of a part of a fund or debt, a specific sum or fixed portion thereof must be specified. 6 C.J.S., Assignments, § 58, page 1103. In the contracts under consideration the portion of the fund attempted to be assigned was "not * * * more than 5¢ per cwt of milk delivered to or marketed through the Association." This language does not constitute an assignment of 5¢ per cwt of milk delivered or marketed. No fixed sum or portion thereof was designated. An agreement for the collection or deduction of "not more than 5¢" is not a definite agreement for the assignment of any specific amount or portion. It is further to be noted that any collections or deductions to which the Association was entitled under the provisions of the contracts were conditional. Their right to receive such collections or deductions depended upon certain services or expenses performed or incurred. There was little evidence of any service performed by the Association and there was no showing as to the value of any services rendered. There was no evidence of any other expense incurred by the Association under the provisions of the contracts. Under such circumstances, the court correctly found that Banner Dairies could not safely pay and was not legally obligated to pay to the Association 5¢ per hundred pounds from the market price of milk purchased by it directly from the producers.

The above enumerated facts and circumstances justified and required the rendition of a judgment denying the temporary injunction and the court did not err in entering judgment accordingly. Since the judgment was required under these facts, other points presented become immaterial and need not be discussed.

The judgment of the trial court is affirmed.